ENTER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ALIRAN NAGY,                        )    No. CV 05-3718-RC
                                    )
          Plaintiff,                )
                                    )    OPINION AND ORDER
     v.                             )
                                    )
JO ANNE B. BARNHART,                )
Commissioner of Social Security,    )
                                    )
          Defendant.                )
_____)

     Plaintiff Aliran Nagy filed a complaint on May 23, 2005, seeking

review of the Commissioner's decision denying her applications for

disability benefits.  On October 31, 2005, the Commissioner answered

the complaint, and the parties filed a joint stipulation on

January 19, 2006.


                         **BACKGROUND**

                              **I**

     On October 31, 2000 (protective filing date), plaintiff filed an

application for disability benefits under the Supplemental Security

Income ("SSI") program of Title XVI of the Social Security Act ("the

Act"), 42 U.S.C. § 1382(a), claiming an inability to work since December 1, 1989, due to sciatica, irritable bowel syndrome, and eczema.  Certified Administrative Record ("A.R.") 33, 265-69, 277.[1] The plaintiff's application was denied on May 10, 2001.  A.R. 213-17. The plaintiff then requested an administrative hearing, which was held on July 22, 2002, before Administrative Law Judge Samuel A. Durso ("ALJ Durso").  A.R. 218-21, 714-45.  On August 26, 2002, ALJ Durso issued a decision finding plaintiff is not disabled.  A.R. 198-209, 458-69.  On September 11, 2002, plaintiff sought review of this decision from the Appeals Council, and on July 28, 2003, the Appeals Council granted review and remanded the matter for further consideration.  A.R. 239-40, 244-47.

On September 26, 2002, while her appeal was pending before the Appeals Council, plaintiff filed another application for SSI benefits, claiming an inability to work since August 31, 1989, due to irritable bowel syndrome, eczema/contact dermatitis, low back pain, degenerative spondylosis, sciatica, arthritis, and chronic bronchitis/asthma.  A.R. 489-91, 496.  This application was denied on January 27, 2003.  A.R. 475-79.  Plaintiff then requested an administrative hearing, which was held on January 15, 2004, before Administrative Law Judge Alexander Weir III ("the ALJ"), who consolidated plaintiff's 2002 application with the Appeals Council's remand of plaintiff's 2000 application.

---

[1]  On January 30, 1998, plaintiff previously filed an application for disability benefits; however, on June 23, 1999, an administrative law judge found plaintiff was not disabled, and on June 7, 2000, the Appeals Council denied review of this decision.  A.R. 44-60, 63-82.  Plaintiff did not pursue the matter in the federal courts; rather, she filed a new application for disability benefits.

A.R. 33, 482, 746-92.  On March 30, 2004, the ALJ issued a decision
finding plaintiff is not disabled.  A.R. 29-43.  The plaintiff
appealed this decision to the Appeals Council, which denied review on
March 25, 2005.  A.R. 16-24.

**II**

The plaintiff was born on November 20, 1956, and is currently 50
years old.  A.R. 80, 265, 489, 502, 720, 780.  She has a high school
education and previously worked as a clerk, cashier, and an
administrative assistant.  A.R. 92, 94-99, 278, 283, 288, 293, 299-
301, 343, 505-12, 723-24, 780-81.

The plaintiff has a long history of both physical and mental
complaints.  Since the ALJ found the prior decision of June 23, 1999,
to be "a final agency determination entitled to *res judicata*
effect[,]" A.R. 34, this Court will only briefly address plaintiff's
medical records prior to that date.

**A.   Physical Condition:**

The plaintiff has had intestinal problems since at least 1983,
and she was diagnosed with irritable bowel syndrome as early as 1988.
A.R. 150-54, 161, 163-64, 166, 168.  Over the years, plaintiff has
received extensive medical treatment at Centro Medico, Inc., from
Nabil Soliman, M.D., and Janet Soliman, M.D., who treated plaintiff
for several conditions, including irritable bowel syndrome (with
frequent bowel movements), lower back pain, sciatica, degenerative
disc disease, degenerative spondylosis, spinal stenosis, radiculo-
//

pathy,[2] asthma, dermatitis, and eczema.[3]   A.R. 344-46, 392-403, 451,
457, 592-613.   On August 18, 2003, Dr. Nabil Soliman opined plaintiff
is permanently disabled and unable to perform either light or
sedentary work.[4]   A.R. 451.


     On April 7, 2001, Joo-Hyung Lee, M.D., an internist, examined
plaintiff and diagnosed her with lower back pain and irritable bowel
syndrome.   A.R. 347-50.   Lumbosacral spine x-rays revealed early
hypertrophic lipping[5] and shallow Schmorl's nodes[6] involving the

---

     [2]   Radiculopathy is a "disease of the nerve roots."
Dorland's Illustrated Medical Dictionary, 1511 (29th ed. 2000).

     [3]   Following the ALJ's decision in this matter, plaintiff
submitted additional medical records from Centro Medico, Inc. and
other medical providers to the Appeals Council, see A.R. 663-708;
however, the Appeals Council did not consider this information
because the records covered the time period after the ALJ's
decision.   A.R. 17.   The plaintiff has not challenged this
ruling; therefore, the Court will not address this medical
evidence.

     [4]   Light work is "work that requires standing as well as
sitting, reaching and handling for a period of time, and
considerable walking.   Occasionally light lifting (under ten
pounds), climbing, kneeling, or crawling, and some bending,
stooping, or squatting may also be required."   A.R. 451.
Sedentary work is "work that requires sitting, reaching and
handling on a continuous basis, with no lifting, climbing or
crawling.   A little walking and some (up to 2 hours per day, in
15 minute increments) standing, stooping, kneeling, and crouching
may also be required."   Id.   These definitions differ somewhat
from Social Security definitions.   See 20 C.F.R. § 416.967(a-b).

     [5]   Hypertrophy is "the enlargement or overgrowth of an organ
or part due to an increase in size of its constituent cells."
Dorland's Illustrated Medical Dictionary at 859.   Lipping is "the
development of a bony overgrowth in osteoarthritis."   Id. at
1018.

     [6]   A Schmorl's node is "an irregular or hemispherical bone
defect in the upper or lower margin of the body of the vertebra."

inferior end plates at L2 and L3.  A.R. 351.  Dr. Lee opined plaintiff
is able to lift, carry, push and/or pull 50 pounds occasionally and 25
pounds frequently, stand and walk occasionally without interruption,
sit frequently without interruption, and occasionally climb, balance,
stoop, crouch, kneel or crawl.  Id.

     On July 25, 2002, Donald B. Striplin, M.D., examined plaintiff
and diagnosed her with a possible herniated lumbar disc.  A.R. 439-42,
454-55, 554-58.  On September 18, 2002, plaintiff underwent a lumbar
spine MRI, which revealed a 2-mm. diffuse disc bulge at L2-L3, a 3-mm.
diffuse disc bulge at L3-L4, a 4-mm. diffuse disc bulge at L4-L5 with
a small annulus tear, a 3-mm. diffuse disc bulge at L5-S1 and
degenerative disc disease at L4-L5.  A.R. 450, 555.

     On November 5, 2002, Edward Klein, M.D., examined plaintiff and
diagnosed her with dyspnea[7] with diminished exercise tolerance, most
likely attributed to the restrictive effect of obesity, among other
conditions.  A.R. 427-35.  Pulmonary function testing revealed severe
obstruction.  A.R. 424, 431, 435, 570-71.  However, on December 10,
2002, Ismail Patel, M.D., an internist, examined plaintiff and
conducted pulmonary function testing, which showed plaintiff had a
normal airflow pattern although plaintiff complained of fatigue during
the testing.  A.R. 572-86.  Dr. Patel opined plaintiff can lift 20
pounds occasionally and 10 pounds frequently and can stand and/or walk

---

Id. at 1224.

     [7]  Dyspnea is "breathlessness or shortness of breath;
difficult or labored breathing."  Dorland's Illustrated Medical
Dictionary, 558 (29th ed. 2000).

for six hours in an 8-hour day with normal breaks.  A.R. 575.

On September 15, 2003, Jeff Altman, M.D., examined plaintiff and diagnosed her with multilevel degenerative disc disease.  A.R. 406-13. Dr. Altman opined plaintiff can occasionally lift and/or carry up to 50 pounds, climb and stoop, and frequently lift and/or carry up to 25 pounds, balance, kneel, crouch, and crawl.  A.R. 410-11.

Medical expert Jorge Minor, M.D., testified at the administrative hearing that plaintiff has a history of irritable bowel syndrome, chronic low back pain, bronchitis, major depression, asthma, degenerative spondylosis and spinal stenosis, among other conditions, but none of these impairments meets or equal the requirements of any listed impairment.  A.R. 753-77.  Dr. Minor also testified that plaintiff's need to use the restroom 11 times during the work day is consistent with the record.  A.R. 765.  Dr. Minor opined plaintiff does not have spondylitis[8] with radiculopathy or sciatica, A.R. 757-63, and further opined plaintiff should not lift and/or carry over 50 pounds or repetitively bend at the waist, stand for long periods of time, or continuously stoop, crawl, or climb ladders.  A.R. 763-64.

**B.   Mental Condition:**

On April 14, 2001, Nader Oskooilar, M.D., a psychiatrist, examined plaintiff and diagnosed her with an unspecified mood disorder, a generalized anxiety disorder, and psychological factors affecting general medical condition, and determined plaintiff's Global

---

[8]  Spondylitis is "inflammation of the vertebrae." Dorland's Illustrated Medical Dictionary at 1683.

Assessment of Functioning ("GAF") to be 70.[9]   A.R. 353-56.   Dr.
Oskooilar opined plaintiff's condition is "not very severe" and she is
able to perform simple, low stress and repetitive tasks and complex
tasks after receiving psychiatric treatment.   A.R. 355.   Dr. Oskooilar
further opined plaintiff can accept instructions from supervisors,
interact with coworkers, deal with workplace stressors, and complete a
normal workday and workweek without much interruption from her
psychiatric condition.   Id.

On December 10, 2002, Bushra Ahmad, M.D., a psychiatrist,
examined plaintiff, diagnosed her with a depressive disorder secondary
to chronic pain, and determined plaintiff's GAF to be 65.   A.R. 587-
91.   Dr. Ahmad opined plaintiff is able understand, remember and carry
out simple instructions and interact with supervisors, co-workers, and
the general public appropriately, but her ability to understand,
remember and carry out complex job instructions, to maintain her
attention and concentration at her job, and to withstand the stresses
and pressures in an 8-hour workday are "mildly" impaired.   A.R. 590.

On May 4, 2001, C.H. Dudley, M.D., a nonexamining psychiatrist,
opined plaintiff has a depressive syndrome characterized by sleep
disturbance, feelings of guilt or worthlessness, and difficulty
concentrating or thinking, and a generalized anxiety disorder.   A.R.

_____

[9]   A GAF of 65-70 indicates "[s]ome mild symptoms (e.g.,
depressed mood and mild insomnia) or some difficulty in social,
occupational, or school functioning (e.g., occasional truancy, or
theft within the household), but generally functioning pretty
well, has some meaningful interpersonal relationships."   American
Psychiatric Association, Diagnostic and Statistical Manual of
Mental Disorders, 34 (4th ed. (Text Revision) 2000).

357-62.  On January 17, 2003, Dr. Dudley opined plaintiff is depressed and has a "mild" restriction in her activities of daily living and maintaining social functioning; "moderate" difficulties maintaining concentration, persistence or pace, and has never had an episode of decompensation.  A.R. 624-37.  Dr. Dudley also opined plaintiff is "moderately" limited in her ability to understand, remember and carry out detailed instructions, but otherwise not significantly limited. A.R. 638-41.  Finally, Dr. Dudley opined plaintiff "retains the ability to understand, remember and carry out simple work-related tasks, in spite of some limitations in her ability to sustaing [sic] attention and concentration."  A.R. 640.

On September 29, 2003, Jack Stephenson, Ph.D., a licensed psychologist, examined plaintiff, conducted psychological testing, and diagnosed plaintiff with a chronic pain disorder associated with both psychological factors and a general medical condition and a depressive disorder secondary to a general medical condition.  A.R. 414-20.  Dr. Stephenson opined plaintiff's ability to maintain an appropriate level of concentration, persistence, and pace necessary to perform a one- or two-step simple and repetitive task is usually unimpaired; however, she may experience mild-to-moderate impairments due to chronic pain. A.R. 419.  Furthermore, Dr. Stephenson stated plaintiff's ability to appropriately relate to others, including co-workers, supervisors, and the general public and her ability to understand, remember and follow instructions and adapt to day-to-day work activities, including attendance and safety, are unimpaired.  A.R. 418-19.  Dr. Stephenson concluded plaintiff is "slightly" limited in her ability to understand, remember and carry out detailed instructions, but is

8

1  otherwise not limited.  A.R. 421-22.

2

3                              **DISCUSSION**

4                                  **III**

5       The Court, pursuant to 42 U.S.C. § 405(g), may review the

6  Commissioner's decision denying plaintiff disability benefits to

7  determine if her findings are supported by substantial evidence and

8  whether the Commissioner used the proper legal standards in reaching

9  her decision.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th

10  Cir. 2006); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

11

12      The claimant is "disabled" for the purpose of receiving benefits

13  under the Act if she is unable to engage in any substantial gainful

14  activity due to an impairment which has lasted, or is expected to

15  last, for a continuous period of at least twelve months.  42 U.S.C. §

16  1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  "The claimant bears the

17  burden of establishing a prima facie case of disability."  Roberts v.

18  Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122

19  (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

20

21      The Commissioner has promulgated regulations establishing a five-

22  step sequential evaluation process for the ALJ to follow in a

23  disability case.  20 C.F.R. § 416.920.  In the **First Step**, the ALJ

24  must determine whether the claimant is currently engaged in

25  substantial gainful activity.  20 C.F.R. § 416.920(b).  If not, in the

26  **Second Step**, the ALJ must determine whether the claimant has a severe

27  impairment or combination of impairments significantly limiting her

28  from performing basic work activities.  20 C.F.R. § 416.920(c).  If

so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1.  20 C.F.R. § 416.920(d).  If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work.  20 C.F.R. § 416.920(f). If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy.  20 C.F.R. § 416.920(g).

Where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations addressing mental impairments.  <u>Maier v. Comm'r of the Soc. Sec. Admin.</u>, 154 F.3d 913, 914 (9th Cir. 1998) (per curiam).  First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work.  20 C.F.R. § 416.920a(b)(1).  Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation.  20 C.F.R. § 416.920a(c)(2-4).  Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment.  20 C.F.R. § 416.920a(d).  Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing.  20 C.F.R. § 416.920a(d)(2).  Finally, if a Listing is not met, the ALJ must then perform a residual functional

capacity assessment, and the ALJ's decision "must incorporate the
pertinent findings and conclusions" regarding plaintiff's mental
impairment, including "a specific finding as to the degree of
limitation in each of the functional areas described in described in
[§ 416.920a(c)(3)]."  20 C.F.R. § 416.920a(d)(3), (e)(2).

Applying the five-step sequential evaluation process, the ALJ
found plaintiff "has not engaged in substantial gainful activity since
her application was filed."  (Step One).  The ALJ then found plaintiff
has irritable bowel syndrome, a back disorder and bronchitis, which
are severe impairments; however, her depression is not a severe
impairment.[10]  (Step Two).  The ALJ then found plaintiff does not have
an impairment or combination of impairments that meets or equals a
Listing.  (Step Three).  The ALJ next determined plaintiff can perform
her past relevant work as an administrative assistant; therefore, she
is not disabled.  (Step Four).

**IV**

"The principles of res judicata apply to administrative
decisions, although the doctrine is applied less rigidly to
administrative proceedings than to judicial proceedings."  <u>Chavez v.</u>

---

[10]   In making this determination, the ALJ found plaintiff's
"mental depression has only a mild impact on her daily living
activities, social functioning, and ability to maintain
concentration, persistence and pace . . . [and] has not caused
any episodes of decompensation of extended duration."  A.R. 40;
<u>see</u> 20 C.F.R. § 416.920a(d)(1) (noting "[i]f we rate the degree
of your limitation in the first three functional areas as "none"
or "mild" and "none" in the fourth area, we will generally
conclude that your impairment(s) is not severe, unless the
evidence otherwise indicates that there is more than a minimal
limitation in your ability to do basic work activities").

1  Bowen, 844 F.2d 691, 693 (9th Cir. 1988); Lester v. Chater, 81 F.3d

2  821, 827 (9th Cir. 1995).  Thus, "[t]he Commissioner may, as she did

3  here, apply res judicata to bar reconsideration of a period with

4  respect to which she has already made a determination, by declining to

5  reopen the prior application."  Lester, 81 F.3d at 827; Krumpleman v.

6  Heckler, 767 F.2d 586, 588 (9th Cir. 1985), cert. denied, 475 U.S.

7  1025 (1986).  However, "[t]he Commissioner's authority to apply res

8  judicata to the period subsequent to a prior determination is much

9  more limited."  Lester, 81 F.3d at 827.

10

11      Where the Commissioner has denied a claimant's earlier disability

12  application, and the denial has become final, the Commissioner's

13  conclusions create a presumption that the claimant remains capable of

14  substantial gainful activity after that date.[11]  Schneider v. Comm'r

15  of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Light v.

16  Soc. Sec. Admin., 119 F.3d 789, 791 (9th Cir. 1997).  Nevertheless,

17  this presumption may be overcome by proving the existence of changed

18  circumstances.  Ibid.  Here, plaintiff has shown sufficient changed

19  circumstances to overcome the presumption of continued

20  nondisability.[12]  As set forth in Part II above, plaintiff has

21  developed serious new health problems, including chronic lower back

22

23      [11]  However, the presumption of continuing nondisability is
24  inapplicable where, as here, "the claimant was unrepresented by
   counsel at the time of the prior claim."  Lester, 81 F.3d at 827-
25  28; Gregory v. Bowen, 844 F.2d 664, 666 (9th Cir. 1988).

26      [12]  In fact, the Appeals Council's 2002 remand for further
   administrative hearings after ALJ Durso's decision finding
27  plaintiff was not disabled reflects the Appeals Council's
   determination that plaintiff's circumstances had changed since
28  1999.

1  pain, asthma, and chronic bronchitis, which were not considered in the
2  1999 decision, and plaintiff has undergone several objective medical
3  tests, including an MRI and spirometric testing, subsequent to the
4  1999 decision.  See, Schneider, 223 F.3d at 974 (Changed diagnoses and
5  test scores provide "sufficient proof of 'changed circumstances' to
6  overcome the presumption that claimant is not disabled."); Light, 119
7  F.3d at 792 (evidence that claimant has been diagnosed with new
8  condition is sufficient to prove changed circumstances).

9

10                                    V

11      A claimant's residual functional capacity ("RFC") is what she can
12  still do despite her physical, mental, nonexertional, and other
13  limitations.  Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001);
14  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  Here,
15  the ALJ found plaintiff retains the RFC for medium work[13] but must
16  avoid excessive dust and fumes and constant bending and stooping.[14]

17      [13]  Under Social Security regulations, "[m]edium work
18  involves lifting no more than 50 pounds at a time with frequent
    lifting or carrying of objects weighing up to 25 pounds."  20
19  C.F.R. § 416.967(c).

20      [14]  Initially, the Court has reviewed plaintiff's claim that
    the ALJ erred in Step Two of the sequential analysis by
21  concluding she does not have a severe mental impairment, and
    finds that claim is without merit.  The ALJ properly partially
22  rejected Dr. Dudley's opinions, A.R. 40 & n.6; see Sousa v.
23  Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998) ("The Commissioner
    may reject the opinion of a nonexamining physician by reference
24  to specific evidence in the medical record."), and the opinions
    of examining physicians Drs. Ahmad and Stephenson support the
25  determination that plaintiff's mental impairment has no more than
    a minimal effect on her ability to do basic work activities.
26  Ukolov v. Barnhart, 420 F.3d 1002, 1006 (9th Cir. 2005); see also
27  Nguyen v. Chater, 75 F.3d 429, 431 (8th Cir. 1996) (concluding
    impairment is not severe where medical evidence failed to show
28  more than a minimal effect on claimant's ability to do basic work

                                   13

A.R. 43.  However, plaintiff contends the RFC assessment is not supported by substantial evidence because the ALJ erroneously determined she is not a credible witness and improperly addressed her irritable bowel syndrome and back complaints.  The plaintiff is correct.

At the most recent administrative hearing, plaintiff testified she is unable to work because she has "horrific" back problems with radiculopathy and leg numbness, constant leg cramps, irritable bowel syndrome, constant mucus and phlegm obstructing her breathing, and she cannot stand any smells.  A.R. 778-79, 783.  In fact, plaintiff averred she routinely has more than 11 bowel movements each day, A.R. 777, and she wears pads (or diapers) and has to change the pads every time she has a bowel movement because of diarrhea.  A.R. 777-78. Additionally, plaintiff testified that when she has stress, she get the "worst cramps[,]" feels like passing out, and has the "worst diarrhea[.]"  A.R. 779.  The plaintiff also stated she uses a nebulizer[15] every 4 hours and has an inhaler for emergencies.  Id. Further, plaintiff testified she needs a cane to walk because otherwise she could fall when her leg becomes numb, A.R. 778-79, and when she used to walk her daughter to school, she had to "sit down and

activities); Santiago Serra v. Sec. of Health & Human Servs., 915 F.2d 1556, 1990 WL 152332, *3 (1st Cir. (Puerto Rico)) (per curiam) (Unpublished Disposition) ("[A] claimant need only be able to understand simple instructions in order to do basic work activities.").  Therefore, the Court will not further address this claim.

[15]  A nebulizer or atomizer is "a device for creating and throwing an aerosol spray."  Dorland's Illustrated Medical Dictionary, at 1179.

stop every few steps or so" even though the school is only half-a-block away.  A.R. 787.  Finally, plaintiff stated she cannot lift over 5 pounds without experiencing severe stomach pain.  A.R. 783.

Once a claimant has presented objective evidence she suffers from an impairment that could cause pain or other nonexertional limitations,[16] the ALJ may not discredit the claimant's testimony "solely because the degree of pain alleged by the claimant is not supported by objective medical evidence."  Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) (en banc); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).  Thus, if the ALJ finds the claimant's subjective complaints are not credible, he must make specific findings to support that conclusion.  Moisa, 367 F.3d at 885; Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001).  Furthermore, if there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005).

The ALJ initially rejected plaintiff's testimony because she "does not take any strong, prescribed medication for her many complaints."  A.R. 41.  This finding is grossly incorrect.  Rather,

---

[16]  "While most cases discuss excess pain testimony rather than excess symptom testimony, rules developed to assure proper consideration of excess pain apply equally to other medically related symptoms."  Swenson v. Sullivan, 876 F.2d 683, 687-88 (9th Cir. 1989).

the record shows plaintiff has been prescribed multiple medications, including Albuterol,[17] Azmacort,[18] Prednisone,[19] Singulair,[20]

---

[17]   Albuterol, also called Proventil, is used to prevent and relieve bronchial spasms, especially those caused by asthma.  The PDR Family Guide to Prescription Drugs, 17, 550 (8th ed. 2000).

[18]   Azmacort is a "metered-dose inhaler[] containing [an] anti-inflammatory steroid medication. . . .  Azmacort is used as long-term therapy to control bronchial asthma attacks."  Id. at 70.

[19]   Prednisone, also called Deltasone, is "a steroid drug . . . used to reduce inflammation and alleviate symptoms in a variety of disorders, including rheumatoid arthritis and severe cases of asthma."  Id. at 188, 531.

[20]   "Singulair is used for long-term prevention of asthma. It reduces the swelling and inflammation that tend to close up the airways, and relaxes the walls of the bronchial tubes, expanding the airways and permitting more air to pass through." Id. at 619.

Serevent,[21] Cyclobenzaprine,[22] Flurbiprofen,[23] Naproxen,[24] Ultram,[25] Vicodin,[26] Voltaren,[27] and Lomotil[28] for her irritable bowel syndrome. See, e.g., A.R. 336-42, 399-401, 405-06, 414, 428, 433, 438, 443-48, 454, 457, 501, 573, 588, 594-97.  Thus, this reason certainly does not support the ALJ's negative credibility determination.  See Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) (ALJ's credibility determination not supported by clear and convincing reasons when ALJ's rationale is belied by record).

---

[21]  "Serevent relaxes the muscles in the walls of the bronchial tubes, allowing the passageways to expand and carry more air.  Taken regularly (twice a day), the drug helps prevent wheezing and other symptoms of asthma, as well as exercise-induced asthma."  Id. at 608.

[22]  Cyclobenzaprine, also called Flexeril, "is a muscle relaxant prescribed to relieve muscle spasms resulting from injuries such as sprains, strains, or pulls."  Id. at 169, 276.

[23]  Flurbiprofen, also called Ansaid, is "a nonsteroidal anti-inflammatory drug . . . used to relieve the inflammation, swelling, stiffness, and joint pain associated with rheumatoid arthritis and osteoarthritis. . . ."  Id. at 42, 281.

[24]  Naproxen, or "Naprosyn, [is] a nonsteroidal anti-inflammatory drug . . . used to relieve the inflammation, swelling, stiffness, and joint pain associated with rheumatoid arthritis, osteoarthritis . . ., juvenile arthritis, ankylosing spondylitis . . ., tendinitis, bursitis, and acute gout; it is also used to relieve menstrual cramps and other types of mild to moderate pain."  Id. at 435, 437.

[25]  "Ultram is prescribed to relieve moderate to moderately severe pain."  Id. at 707.

[26]  Vicodin is used "for the relief of moderate to moderately severe pain."  Id. at 723.

[27]  "Voltaren . . . [is a] nonsteroidal anti-inflammatory drug[] used to relieve the inflammation, swelling, stiffness, and joint pain associated with rheumatoid arthritis, osteoarthritis . . ., and ankylosing spondylitis. . . ."  Id. at 735.

[28]  Lomotil, also called Diphenoxylate and Atropine, is used to control diarrhea.  Id. at 218, 367.

1    The ALJ also cited "a lack of recent medical treatment for any of

2    [plaintiff's] complaints" as a reason supporting his negative

3    credibility finding.  A.R. 41.  Again, this is not true.  Rather, the

4    record reflects plaintiff has been regularly seen at Centro Medico,

5    Inc. for many years.[29]  See, e.g., A.R. 344-46, 392-403, 451, 592-613.

6    Thus, this reason also does not support the ALJ's adverse credibility

7    finding.  Holohan, 246 F.3d at 1208.

8

9        Next, the ALJ conclusorily found, without citing any specific

10   example, that plaintiff's "daily activities are inconsistent with her

11   allegations of restrictions and limitations."  A.R. 41-42.  This is

12   insufficient.  See Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir.

13   1990)(ALJ erred in failing to "'fully articulate reasons for refusing

14   to credit'" claimant's subjective pain testimony; although ALJ cited

15   claimant's daily activities, "there was absolutely no finding to the

16   effect that the ability to perform those daily activities translated

17   into the ability to perform appropriate work.").  In Gonzalez,

18   although the ALJ identified the claimant's daily activities that were

19   inconsistent with the claimant's inability to work, i.e., he "'walked

20   one to one and a half miles, and he sometimes watches ball games,

21   alternating sitting and standing, for an hour to an hour and a half at

22   a time,'" the Appeals Court held the ALJ erred in failing to make any

23   finding that the identified daily activities translated into the

24   ability to work.  Gonzalez, 914 F.2d at 1201.  In this case, the ALJ's

25

26        [29]  At the most recent administrative hearing, plaintiff was
     not questioned about the nature and frequency of her medical
27   care.  See, e.g., A.R. 777-88.  However, plaintiff previously
     testified she visits her physicians at Centro Medico, Inc. "a
28   lot."  See A.R. 727, 729-30.

1  error is more egregious since he did not even bother to identify any

2  of plaintiff's daily activities that are inconsistent with her

3  testimony.

4

5      The ALJ also found plaintiff "exaggerated her bathroom needs and

6  the frequency of bathroom visits[, finding t]here is no evidence to

7  substantiate her claims of urination 20 times a day." A.R. 42.  This

8  finding is not supported by substantial evidence since nothing in the

9  record suggests plaintiff claims she urinates 20 times a day.

10 However, plaintiff did testify she has 11 or more bowel movements each

11 day, A.R. 777, and the medical expert found this testimony consistent

12 with the medical record.  A.R. 765; see also A.R. 175, 405, 423, 436,

13 456, 594.

14

15     Finally, the ALJ conclusorily opined plaintiff's "allegations are

16 not supported by the credible medical evidence." A.R. 41.  However,

17 as set forth in Part II above, there is substantial credible medical

18 evidence to show plaintiff suffers from multiple impairments that

19 could cause her pain and discomfort.  Thus, the fact that plaintiff's

20 testimony may not be "fully corroborated by the objective medical

21 findings, in and of itself, is not a clear and convincing reason for

22 rejecting it." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir.

23 2001); see also Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986)

24 ("It is improper as a matter of law to discredit excess pain testimony

25 solely on the ground that it is not fully corroborated by objective

26 medical findings.").

27

28     Therefore, "the ALJ provided unsatisfactory reasons for

                                    19

1   discounting [plaintiff's] credibility, and . . . his findings [are]

2   unsupported by substantial evidence based on the record as a whole."

3   Reddick v. Chater, 157 F.3d 715, 724 (9th Cir. 1998).

4

5                                  **VI**

6         This Court has discretion to award disability benefits to a party

7   when there is no need to remand the case for additional factual

8   findings.  McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002);

9   Holohan, 246 F.3d at 1210 (9th Cir. 2001.  Generally, the Court will

10  direct the award of benefits in cases where the record has been fully

11  developed and where further administrative proceedings would serve no

12  useful purpose.  McCartey, 298 F.3d at 1076-77; Vertigan, 260 F.3d at

13  1053.

14

15        "[W]here the ALJ improperly rejects the claimant's testimony

16  regarding [her] limitations, and the claimant would be disabled if

17  [her] testimony were credited, . . . that testimony is . . . credited

18  as a matter of law."  Lester, 81 F.3d at 834; see also Benton v.

19  Barnhart, 331 F.3d 1030, 1041 (9th Cir. 2003) (ALJ did not set forth

20  clear and convincing reasons for rejecting claimant's subjective

21  complaints, and "given claimant's obvious serious physical impair-

22  ments, [her] claim of pain and physical limitations should have been

23  credited.").  Here, vocational expert Ruth Arnush testified that an

24  individual who had to go to the restroom and change her pads or

25  diapers 11 times during the work day would not be able to perform any

26  work in the national economy.  A.R. 791.  Thus, crediting plaintiff's

27  testimony, plaintiff cannot perform any work in the national economy,

28  and the Commissioner should be ordered to award benefits to plaintiff.

1   See Moisa, 367 F.3d at 886-87 ("The Commissioner, having lost this

2   appeal, should not have another opportunity to show that claimant is

3   not credible any more than claimant, had [s]he lost, should have an

4   opportunity for remand and further proceedings to establish his

5   credibility.").[30]

6

7                                **ORDER**

8       IT IS ORDERED that plaintiff's request for relief be granted, and

9   the Commissioner shall award disability benefits to plaintiff under

10  the Supplemental Security Income program, 42 U.S.C. § 1382(a).

11  DATE:    December 1, 2006          /s/ Rosalyn M. Chapman
                                        ROSALYN M. CHAPMAN
12                                      UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26
    ─────────────────
         [30]   Having reached this conclusion, it is unnecessary to
27  reach the other issues plaintiff raises.

28  R&R-MDO\05-3718.MDO
    12/1/06

                                21